## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

ANN NORDWALL,

        Plaintiff,

v.                               Case No:  2:14-cv-747-FtM-CM

PNC MORTGAGE, d/b/a PNC
BANK,

        Defendant.

_____

## <u>ORDER</u>

Before the Court is Defendant, PNC Mortgage d/b/a PNC Bank's ("PNC"), Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law, or in the Alternative a Motion for More Definite Statement[1] (Doc. 12, "Motion to Dismiss"), filed on January 27, 2015.  Plaintiff responded in opposition.  Doc. 15.  For the reasons set for below, the motion is granted in part and denied in part.

### I.    Background

The underlying facts as set forth in the Complaint and the exhibits thereto[2] are as follows.  Plaintiff obtained a mortgage from National City Mortgage, now PNC,[3]

---

[1] Defendant also moved to strike Plaintiff's demand for a jury trial.  Doc. 12 at 21.  The Court granted this motion during the preliminary pre-trial conference held on May 27, 2015.

[2] Documents attached to a complaint are treated as part of the complaint for Rule 12(b)(6) purposes.  *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F. 3d 1211, 1215-16 (11th Cir. 2012) (citation omitted).

[3] PNC Bank, National Association is the successor by merger to National City Mortgage.  Doc. 1-4 at 21.

on August 14, 2007 for a residence located in Estero (Collier County), Florida.   Doc. 12-2 at 2-4.   Plaintiff defaulted on the mortgage, and, in March 2012, PNC initiated a foreclosure action against her in Lee County, Florida.   Doc. 2 at 3.   Marcus Viles of Viles & Beckman LLC ("V&B"),[4] entered a notice of appearance in that case on Plaintiff's behalf.   Doc. 1-4[5] at 21-22.

After the foreclosure action was initiated, on October 21, 2013, Plaintiff applied for a loan modification through her counsel, also V&B.   Doc. 1-4 at 23.   The letter accompanying the loan modification package addressed to PNC's loss mitigation department was on V&B letterhead with two attorneys' names on the letterhead – Marcus W. Viles and Michael L. Beckman.   It was signed, however, by a litigation paralegal.   *Id.*   In that correspondence, V&B requested that Defendant cease and desist all communication with "our client" and that all correspondence and phone calls be directed to "our office."   *Id.*   On August 7, 2014, V&B also faxed to Defendant a document relating to the loan modification, along with a Borrower Signature Authorization and Notice of Representation ("Notice").   Doc. 1-5 at 1, 15. The fax cover sheet also stated:

> Pursuant to our clients' [sic] rights under federal debt collection laws, we are requesting that you cases [sic] and

---

[4] Viles & Beckman, LLC also represents Plaintiff in this case, although a different attorney, Maria Alaimo, is handling this matter on Plaintiff's behalf.   *See generally*, docket and First Amended Complaint (Doc. 1).

[5] When this case was removed from state court, the entire state court file including the amended complaint and exhibits were attached to the notice of removal.   Doc. 1.   The amended complaint was later docketed as a separate entry (Doc. 2) but the exhibits to the amended complaint remained part of the notice of removal.   Accordingly, when the Court references the exhibits to the amended complaint, it will be referencing Doc. 1 rather than Doc. 2.

> desist communication with them [sic] in relation to the
> above-referenced loan.   Unless specifically informed
> otherwise, please direct all communication to our office.

Doc. 1-5 at 1.  The letter, on V&B letterhead, was signed by Allison Aragona, the

same litigation paralegal who signed the October 21, 2013 letter.   *Id.*; *see* Doc. 1-4 at

23.  The Notice attached to the letter, signed by Ms. Nordwall on August 4, 2014,

states in relevant part:

> I hereby request that my attorney, Viles & Beckman, LLC
> be contacted from here forward regarding my loan.   Please
> forward any/all letters, mail, notices, e-mails and faxes to
> them directly.   *Please continue to send any mortgage
> statements, mortgage updates, insurance correspondences,
> etc. to my address.*   I further request that any phone calls
> be made directly to my lawyer as well.

Doc. 1-5 at 15 (emphasis added).   From September to November 2014, V&B continued

to send emails to Defendant's counsel similarly requesting that Defendant cease and

desist communicating directly with Plaintiff and Plaintiff's family members or other

third parties.   *See* Docs. 1-5 at 11, 14, 21.   The emails noted that despite "multiple

requests" that all communications go through V&B and cease and desist requests,

PNC continued to contact Plaintiff directly rather than communicating with Plaintiff

through her counsel.   *Id.*

On December 12, 2014, Plaintiff filed this action in the Circuit Court, Twentieth

Judicial Circuit, in and for Lee County, Florida alleging that Defendant violated

Florida's Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55, *et. seq.*

and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*   Doc.

2 at 1.   Plaintiff's twenty-five count amended complaint alleges various violations of the FCCPA and the FDCPA.   Doc. 2.

Counts One through Nineteen allege violations of Fla. Stat. § 559.72(18) for Defendant communicating with Plaintiff when Defendant knew Plaintiff was represented by counsel.   *Id*. ¶¶ 17-116.   Specifically, Counts One through Twelve relate to written communications between Defendant and Plaintiff, attached as exhibits to the complaint.   *Id*. ¶¶ 17-79.   Counts Thirteen through Nineteen relate to phone calls Defendant allegedly made to Plaintiff.   *Id*. ¶¶ 80-116.   Count Twenty alleges that Defendant's communications were "willful, abusive, harassing, and designed to intimidate and scare the Plaintiff."   *Id*. ¶120.

Plaintiff also alleges violations of the FDCPA in Counts Twenty-One through Twenty Five.   Doc. 2.   Count Twenty-One states that Defendant violated the FDCPA by intentionally communicating with Plaintiff, knowing that Plaintiff was represented by counsel, and with the intent of coercing Plaintiff to pay the alleged debt.   *Id*. ¶124-125.   Count Twenty-Two asserts that Defendant contacted Plaintiff after receiving a request to cease communication with Plaintiff.   *Id*. ¶129.   Count Twenty-Three alleges that that Defendant continuously called "with the intent to annoy, abuse, and/or harass the Plaintiff."   *Id*. ¶135.   Plaintiff alleges in Counts Twenty-Four and Twenty-Five that Defendant improperly communicated with Plaintiff's relatives regarding Plaintiff's debt without Plaintiff's consent, causing her to suffer "humiliation, embarrassment, and other damages…."   *Id*. ¶¶141-154.

Plaintiff seeks statutory damages in the amount of $25,000.00 for violations of the FCCPA and the FDCPA along with actual and punitive damages, and attorney's fees and costs.   Doc. 2 at 18-19.

Defendant subsequently removed the action to this Court and filed the present Motion to Dismiss, pursuant to Rules 8, 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure.   Docs. 1; 12.   Defendant requests that the amended complaint be dismissed in its entirety or, in the alternative, pled with more specificity.   Doc. 12 at 1.

## II.   Discussion

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   This obligation requires "more than labels and conclusions, and formulaic recitation" of facts to survive a 12(b)(6) motion to dismiss.   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "[The] factual allegations must be "plausible" and "enough to raise a right to relief above the speculative level."   *Id.*

When evaluating a motion to dismiss, the Court accepts as true all factual allegations set forth in the complaint and the attached exhibits.   *Griffin Industries. Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007).   "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."   Fed. R. Civ. P. 10(c).   "[T]he Court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."   *Marshall Cnty. Bd. Of. Educ.*

*V. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citing *Executive 100, Inc. v. Martin Cnty.*, 992 F.2d 1536, 1539 (11th Cir. 1991)).

The FCCPA provides in pertinent part that:

> In collecting consumer debts, no person shall communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Fla. Stat. § 559.72(18).   The FDCPA has a nearly identical provision, which states:

> Without prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt – if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

15 U.S.C. § 1692c(a)(2).

### A. Notice

Defendant first argues that each of Plaintiff's claims fail as a matter of law because Defendant was never put on notice that Plaintiff was represented by counsel. Doc. 12 at 3.   Defendant specifically references Plaintiff's counsel's notice of appearance filed in the foreclosure action (Doc. 1-4 at 21-22) and the purported cease and desist letter faxed to Defendant's loss mitigation department on October 21, 2013

(Doc. 1-4 at 23).   Doc. 12 at 3.   Defendant states that the notice of appearance filed in the foreclosure case is not automatically so broad that it includes representation for all debt-related activity.   *Id.* at 4.   Furthermore, Defendant asserts that the cease and desist letter fails to comply with the requirements of the FCCPA and the FDCPA because it does not include the attorney's name handling the case but only identifies the law firm.   *Id.*

Actual knowledge is required to prove violations of Fla. Stat. § 559.72(18) and 15 U.S.C. § 1692c(a)(2).   *Erickson v. General Elec. Co.*, 854 F.Supp.2d 1178, 1182 (M.D. Fla. 2012).   The Court agrees with Defendant that Plaintiff's counsel's notice of appearance in a separate action does not constitute actual notice of representation for all-debt related activity.   The Court, however, does find that the October 21, 2013 cease and desist letter complies with the requirements of the FCCPA and FDCPA. Although the correspondence is signed by a paralegal, there are two attorneys' names listed on the letterhead along with the firm's address.   Doc. 1-4 at 23.   The Court agrees with Plaintiff that PNC could "readily ascertain, such attorney's name and address" from the correspondence.   Doc. 15 at 2-3.   Therefore, the October 21, 2013, correspondence put Defendant on notice that Plaintiff was represented by counsel.

Moreover, Defendant also was put on notice that Plaintiff was represented by counsel by the numerous other notices and correspondence sent by Plaintiff's counsel to Defendant or Defendant's counsel, including cease and desist letters and the Notice. *See* Docs. 1-5 at 1, 11, 14, 15.   Although Plaintiff requests in the Notice that certain correspondence related to her mortgage and insurance continue to go to her directly,

the cease and desist letters request that all correspondence concerning the loan go to Plaintiff's attorney.   Doc. 1-5 at 15.   While Defendant may be confused as to whether Plaintiff wanted certain communications to go directly to her and which communications those would be, Defendant's state of mind is not a consideration in the motion to dismiss presently before the Court, where the Court's review is limited to the complaint and exhibits thereto.   The exhibits to the Complaint demonstrate that Defendant was put on notice from correspondence dating back to October 2013 that Plaintiff was represented by counsel.   That the October letter was signed by the firm's paralegal instead of its attorneys is of no moment, provided the attorneys' names and address can be "readily ascertained" from the correspondence, as they can here.   Any other arguments concerning Defendant's understanding or intent are more properly addressed after factual discovery on a motion for summary judgment.

### B. FCCPA – Counts One through Twenty

Counts One through Twenty allege violations of the FCCPA.   Doc. 2 ¶¶ 1-122. Plaintiff argues that Defendant violated Fla. Stat. § 559.72(18) by communicating directly with Plaintiff after Defendant had knowledge that Plaintiff was represented by counsel.   *Id.*   The communication with Plaintiff must be related to the collection of a debt in order to be a violation of the FCCPA.   *See* Fla. Stat. § 559.55(5). Although Counts One through Twenty allege violations under the FCCPA, "the FCCPA provides that '[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.'"

*Kelliher v. Target Nat. Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) (quoting Fla. Stat. § 559.77(5)).   Thus, cases interpreting the federal statute also will inform the Court's decision concerning the Florida legislation.

Plaintiff's claims discuss various communications allegedly made in violation of the FCCPA.   The Court has grouped these claims into several different subcategories for ease of discussion:   (1) Counts Six and Twelve, (2) Counts One, Two, Four, Seven, Nine, and Ten, (3) Counts Three, Five, Eight, and Eleven, (4) Counts Thirteen through Nineteen, and (5) Count Twenty.   The Court will address each of these subcategories in turn.

### 1.   Counts Six and Twelve – Private Mortgage Insurance Letters

Plaintiff argues in Counts Six and Twelve that Defendant violated Fla. Stat. § 559.72(18) when it sent letters to Plaintiff on September 26, 2014 and November 25, 2015, after notifying Defendant that Plaintiff was represented by counsel.   Doc. 2 ¶¶43-47; 75-79.   As noted, in order for there to be a violation, the communication must be in relation to the collection of a debt.   *See* Fla. Stat. § 559.55(5); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F. 3d 1211, 1216 (11th Cir. 2012). Thus, not all communications with a debtor are in violation of the FCCPA or FDCPA. *See Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010);[6] *see also Wood v. Citibank, N.A.*, 2015 WL 3561494 (M.D. Fla. 2015).   The Court looks objectively at

---

[6] Decisions from other circuits are not binding. *Bonner v. City of Prichard Ala.*, 661 F.2d. 1206, 1209 (11th Cir. 1981). The Court, however, finds the referenced cases from other circuits persuasive, as the Eleventh Circuit Court of Appeals has not specifically addressed some of the issues raised in the Motion to Dismiss.

the communication to determine whether the communication was made in connection with the collection of a debt. *Gburek*, 614 F.3d at 385-86 (citing *Ruth v. Triumph*, 577 F.3d. 790 (7th Cir. 2009)). When the communication is informational in nature as opposed to demanding collection of a debt, the communication does not violate the FDCPA. *Wood*, 2015 WL 3561494 at *3; *Gillespie v. Chase Home Finances, LLC*, 2009 WL 4061428 (N.D. Ind. 2009) (holding that the correspondence sent to the represented debtor was informational and not subject to the FDCPA when the letters did not provide the terms of payment, deadline, threaten future collection proceedings, or demand payments).

In *Wood*, a court in this district held that the correspondence sent to the debtor was not subject to the FDCPA constraints because nothing in the letters were attempting to induce payment. *Wood,* 2015 WL 3561494 at *3. One letter stated, in pertinent part:

> Dear Patricia A. Wood: Your loan ending in [last four digits of account number] has been sold to Portfolio Recovery Associates, LLC and is no longer owned by Citi Effective immediately, please send any future payments or correspondence to Portfolio Recovery Associates, LLC. . . .

*Id.* Collection of a debt was not the animating purpose of the letter, as nothing in the letter suggested that the defendant intended to induce payment. *Id* at *3-4. The court concluded that the communication was purely informational. *Id.* at 4.

Here, Counts Six and Twelve, which concern disclosure notices required by the Federal Homeowners Protection Act of 1998, discuss Private Mortgage Insurance

("PMI").   Doc. 1-5 at 10, 20.   The correspondence clearly specifies in the heading that this is a required communication.   *Id.*   The correspondence states in pertinent part:

> IF YOUR LOAN CLOSED ON OR AFTER JULY 29, 1999:
>
> Private Mortgage Insurance: Your mortgage loan requires Private Mortgage Insurance (PMI). PMI protects lenders and others against financial loss when borrowers default. Charges for the insurance are added to your loan payments. Under certain circumstances, federal law gives you the right to cancel PMI or requires that PMI automatically terminate. Cancellation or termination of PMI does not affect any obligation you may have to maintain other types of insurance.

*Id.*   The letter further explains how Plaintiff can request cancellation of her PMI and where to call with questions.   *Id.*   These letters do not discuss or demand payments or reference any information in connection with any debt. The communications are purely informational, and do not fall within the confines of the FCCPA or FDCPA. Moreover, Plaintiff consented in her Notice to communications concerning "insurance."   Doc. 1-5 at 15.   Accordingly, Counts Six and Twelve will be dismissed.

### 2. Counts One, Two, Four, Seven, Nine, and Ten – Loss Mitigation Letters

The Code of Federal Regulations mandate that the servicer

> [n]otify the borrower in writing within 5 days after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is complete or incomplete.   If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete.

12 C.F.R. § 1024.41(b)(2)(i)(B).   The correspondence at issue in these counts discuss the details of Plaintiff's loss mitigation application and are subject to the requirements of the FDCPA.   Letters from a debt collector offering alternatives to foreclosure and requesting a debtor's financial information is a correspondence "in connection with the collection of a debt," as it intends to induce payment despite the fact that it does not contain an explicit demand for payment.   *Gburek*, 614 F.3d. at 382.   Moreover, even correspondence that appears purely informational could be construed as being "in connection to the collection of the debt" if the debt collector would not have sent the correspondence but for the attempt to collect on the debt. *Id.* at 385 (citing *Ruth v. Triumph Partnerships,* 577 F.3d 790 (7th Cir. 2009) (holding that a privacy notice enclosed with a collection letter was sent in connection with the collection of the debt because the notice would not have been sent if there was not an attempt to collect a debt)).

*Gburek* is instructive to this case. The plaintiff in *Gburek* defaulted on her mortgage and was contacted by letter by her loan servicer to discuss "foreclosure alternatives." *Gburek*, 614 F.3d at 382.   The letter stated:

> We recently sent you a letter requesting that you contact our office to review your financial situation and discuss foreclosure alternatives. To date, we have not received a response to our request.
>
> Again, we would like to emphasize that it is not too late to save your home. Options may be available to help preserve your homeownership. To determine options that best fit your financial situation, you must complete and return the enclosed form and provide the requested documentation to [Litton's Loss Mitigation Department] within 14 business days.

*Id.* A few days later, the plaintiff received another letter from a company that partnered with her mortgage-loan servicer. *Id.* at 383. That letter stated that the company was not a debt collector and could not accept payments from her but the company wanted to collect information from her to analyze her financial situation. *Id.* The court held that the first letter from her loan servicer was an attempt to collect on a defaulted loan by settlement or otherwise, even though it did not explicitly ask for payment. *Id.* at 386. The court found the second letter from the partnering company also was within the scope of the FDCPA because the purpose of the letter was to encourage the plaintiff to contact her loan servicer to discuss settlement options. *Id.* The court determined that dismissal of these claims was inappropriate because the communications were subject to the statute. *Id.* at 386-87.

In the present case, Plaintiff, through counsel, submitted a loss mitigation application. Doc.1-4 at 23. PNC acknowledged receipt of the application and requested specific financial information from Plaintiff to complete the application. Doc. 1-5 at 5, 6, 12, 17. Similar to *Gburek*, these letters were an attempt to collect a debt through settlement or otherwise. Specifically, the correspondence attached as part of composite exhibit E to Plaintiff's amended complaint states:

> We understand that borrowers sometimes face challenges when it comes to making their payments. Your request for hardship assistance has been received by our Loss Mitigation Department; however, we need additional information from you to evaluate your request.
> . . . .
> In addition, if you do not return all of the required documents to us by 9/12/14, we may not be able to evaluate your loan for a foreclosure prevention alternative, and

> foreclosure proceedings will continue, including referral to
> foreclosure if your loan was not previously referred.

Doc. 1-5 at 5-6.   Analogous to the correspondence in *Gburek* where the debt collector sent correspondence to the debtor discussing foreclosure alternatives and requesting financial information in an attempt to obtain payment, here PNC sent these letters directly to Plaintiff in an attempt to induce payment.   Accordingly, these letters were sent "in connection with the collection of a debt" and subject to the FDCPA, despite lacking a direct request for payment.

Similarly, this analysis applies to the correspondence denying Plaintiff's request for loss mitigation.   Doc. 1-5 at 8, 16.   While these communications do not request any information from Plaintiff but simply inform her that her application has been denied, the correspondence provides her with the opportunity to dispute the denial.   *Id*.   This is another attempt by Defendant to provide an alternative and induce payment by the Plaintiff.

Moreover, the correspondence sent by PNC discussing the valuation and appraisal performed on her property in relation to her loss mitigation claim is a communication "in connection with the collection of a debt."   Doc. 1-5 at 3, 4, 18. Defendant also sent a letter advising Plaintiff her loss mitigation representative. Doc. 1-5 at 2.   Defendant argues that these communications are purely informational and therefore not subject to the statute.   Doc. 12 at 11, 16.   These letters, however, would not have been sent but for Defendant's attempt to collect on the debt through loss mitigation.   *See e.g. Gburek*, 614 F.3d at 385-86 (citing *Ruth v. Triumph*, 577

F.3d. 790 (7th Cir. 2009)).   Consequently, these letters are subject to the restrictions of the FDCPA.

Defendant also asserts that even if these communications are subject to the FDCPA, it should not be subject to liability, as the communications are required by statute.   Doc. 12 at 12-13.   Although both the FCCPA and the FDCPA clearly state that it is violation to communicate with a represented debtor, the Consumer Finance Protection Bureau ("CFPB") clarifies, in the CFPB Bulletin 2013-12 (Doc. 12-1), that in some instances the debt collector may contact the debtor directly despite the issuance of a cease and desist notice.   Consumer Fin. Protection Bureau, Bull. No. 2013-12, Implementation Guidance for Certain Mortgage Servicing Rules (2013). The CFPB Bulletin is an advisory opinion that provides direction on implementing certain rules.   *Id.* at 1.   Specifically, this bulletin provides guidance regarding, "[s]ervicers' obligation to provide certain notices/communications to borrowers who have exercised their right under the FDCPA barring debt collectors from communicating with them."   *Id.*   The CFPB Bulletin states that the "FDCPA 'cease communication' option does not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions."   *Id.* at 7.   Those provisions include 12 C.F.R. § 1024.41 related to loss mitigation, and § 1026.41 related to periodic statements.   *Id.*   The FDCPA also states that it does not impose any liability to any act done or omitted in good faith in conformity with any advisory opinion of the CFPB. 15 U.S.C. § 1692k(e).   Thus, any correspondence Defendant sent in "good faith"

pursuant to the above provisions is not subject to liability, despite the receipt of a cease and desist communication.

At this stage of the proceedings, however, the Court cannot determine as a matter of law whether Defendant acted in good faith, because such allegations are not contained in the amended complaint or exhibits.   When evaluating a motion to dismiss, the Court cannot consider matters outside of the complaint and its exhibits. *See Marine Coatings of Alabama, Inc. v. U.S.*, 792 F.2d 1565 (11th Cir. 1986).   When matters outside of the pleadings are considered, the motion to dismiss is converted to a motion for summary judgment.   *Id.*   Here, Defendant requests that Counts One, Two, Four, Five, Seven, Nine, and Ten be dismissed because the correspondence at issue in those counts are required by statute, and the CFPB Bulletin permits sending those letters directly to the debtor despite the receipt of a cease and desist request. The FDCPA, however, requires that the act be done in *good faith*.   15 U.S.C. § 1692k(e)(emphasis added).   Based on the information alleged in the amended complaint, the Court cannot determine at this time whether these letters were sent in good faith.   At this stage, the Court need only determine whether Plaintiff's allegations are sufficient to survive as a motion to dismiss.   *Gburek*, 614 F.3d at 386. The Court finds that Plaintiff allegations in these counts, including the content of the letters, are sufficiently pled to state a cause of action.

### 3.  Counts Three, Five, Eight, and Eleven – Delinquency Notices

Additionally, Plaintiff asserts violations of the FCCPA in Counts Three, Five, Eight, and Eleven.   Doc. 2 at 5-10.   The communications at issue in these claims are

delinquency notices required by the regulations.   *See* Doc. 1-5 at 7, 9, 13, and 19; 12 C.F.R. § 1026.41(d)(8).   The regulations provide that if the consumer is more than 45 days delinquent a servicer can provide, in a separate letter, information related to when the debtor became delinquent, a notice of possible risks, an account history, a notice indicating any loss mitigation program to which the debtor has agreed, and the total amount needed to bring the account current. 12. C.F.R. § 1029.41(d)(8). The information contained in these communications is the information required by the regulations.

Defendant does not assert that these notices are not related to the collection of a debt.   Rather, Defendant argues that it is not subject to liability because these letters were sent pursuant to the regulations and the CFPB Bulletin permits these communications despite the receipt of a cease and desist letter.   Doc. 12 at 13-17. For the reasons state above, the Court cannot determine at this stage of the litigation whether these letter were sent in good faith and would therefore protect Defendant from liability.   According, Defendant's motion is denied as to Counts Three, Five, Eight, and Eleven.

### 4.  Counts Thirteen through Nineteen – Telephone Calls

Counts Thirteen through Nineteen of Plaintiff's amended complaint also allege violations of Fla. Stat. § 559.72(18).   These counts relate to phone calls Defendant allegedly made.   Doc. 2 at 10-14.   Defendant argues that these counts are vague and do not provide sufficient information to allow Defendant to respond to the allegations. Doc. 12 at 17-18.   The Court agrees.   In order for a communication to be subject to

the FCCPA, the communication has to be in relation to the collection of a debt.   Fla. Stat. § 559.55(5).   As pled, Plaintiff fails to state a cause of action pursuant to the FCCPA.   Additional details related to the content of the communications are required to sustain these claims.   Accordingly, Counts Thirteen though Nineteen are dismissed without prejudice to allow Plaintiff the opportunity to plead the allegations more specifically.

### 5.  Count Twenty

Plaintiff alleges Defendant violated Fla. Stat. § 559.72(7) by sending numerous letters on the same day and making numerous phone calls to Plaintiff during the period when there was a pending lawsuit between the parties.   Doc. 2 at 14.   This provision makes it unlawful for a person to:

> [w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or his or her family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

Fla. Stat. § 559.72(7).   To sustain a cause of action for a violation of this statute, Plaintiff must allege the purpose of the communication as well as the frequency. *Story v. J.M. Fields, Inc.*, 343 So.2d 675, 677 (Fla. 1st DCA 1977).   Here, Plaintiff simply alleges that Defendant sent numerous letters and made several phone calls that were willful, abusive and harassing.   Doc. 2 at ¶119-120.   This information is insufficient to sustain this cause of action.

Moreover, Count Twenty is an impermissible "shotgun pleading."   "Shotgun pleadings are those that incorporate every antecedent allegation by reference into

each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d. 1273, 1279 (11th Cir. 2006). Count Twenty is a classic example of a shotgun pleading. Plaintiff re-alleges and incorporates paragraphs 1-116 into its claim for relief. Doc. 2 at ¶117. The remedy for shotgun pleadings is to allow Plaintiff to re-plead. *Wagner* 464 F.3d at 1277. Thus, the Court will dismiss Count Twenty without prejudice and allow Plaintiff the opportunity to re-plead the claim with more specificity.

### C. FDCPA Claims

The FDCPA was enacted to discourage debt collectors from engaging in abusive, deceptive, or unfair debt-collection practices. *Gburek*, 614 F.3d at 384; 15 U.S.C. § 1692 *et. seq.* The statutes also regulates the communications between the debt collector and the debtor. 15. U.S.C. § 1692c.

#### 1. Counts Twenty-One through Twenty-Three – Communicating with a Represented Party

Plaintiff asserts that Defendant violated the FDCPA by communicating with Plaintiff while Plaintiff was represented. Doc. 2 at ¶¶ 123-140. Plaintiff, however, fails to identify the communications that she alleges violated the statute. Rather, she improperly pleads these counts as "shot-gun pleadings." Each count re-alleges and incorporates paragraphs 1-122 of Plaintiff's amended complaint. Doc. 2 at ¶123, 128, 133. To the extent Plaintiff is referring to the communications referenced in Counts One through Twenty, Plaintiff needs to more clearly state such allegations and which specific communications she alleges violate the statute in order to sustain her claims.

Accordingly, the Court will dismiss Counts Twenty-One through Twenty-Three without prejudice and allow Plaintiff to re-plead these counts.

### 2. Counts Twenty-Four and Twenty-Five – Third-Party Communications

The FDCPA makes it unlawful for a debt collector to communicate, in connection with the collection of any debt, with any person other than the consumer or his attorney.   15 U.S.C. § 1692c(b).   Here, Plaintiff alleges that Defendant sent two emails to Plaintiff's relatives regarding Plaintiff's debt. Doc. 2 at ¶ 142, 148. Plaintiff does not specify whether the emails were related to the collection of a debt. The substance of the communication is imperative to sustain a cause of action under the FDCPA.   15 U.S.C. § 1692c(a)(2).   Therefore, the Court will dismiss these counts without prejudice and allow Plaintiff the opportunity to provide a more definite statement as to the allegations in Counts Twenty-Four and Twenty-Five.

### III.   Conclusion

ACCORDINGLY, it is hereby

**ORDERED:**

1.     Defendant's Motion to Dismiss Amended Complaint and Incorporated Memorandum of Law, or in the Alternative a Motion for More Definite Statement (Doc. 12) is **GRANTED in part and DENIED in part**.

2.     Defendant's Motion to Dismiss is **GRANTED** as to Counts Six, Twelve, and Thirteen through Twenty-Five, and **DENIED** at to Counts One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, and Eleven.

3.     Counts Six and Twelve are **DISMISSED with prejudice.**

4.      Counts Thirteen through Twenty-Five are **DISMISSED without prejudice.**

5.      The Court will, sua sponte, extend the deadline in the Case Management in Scheduling Order to amend pleadings.   Plaintiff shall have up to and including **July 21, 2015** to amend Counts Thirteen through Twenty-Five.   If Plaintiff fails to amend by that time, the dismissal of these claims shall be deemed to be with prejudice.

**DONE** and **ORDERED** in Fort Myers, Florida on this 7th day of July, 2015.


CAROL MIRANDO
United States Magistrate Judge


Copies:
Counsel of record